**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**West Palm Beach Division**

**Case No. 9:10-cv-81114-XXXX**

N884S, Inc., and
John J. Koresko, V,                                       Injunctive and Declaratory Relief
                                                                          Civil Action

         Plaintiffs,

      v.

Danny Joyner a/k/a Dan Joyner, Aviation Safety
Technologies, Inc., Ray LaHood, as Secretary of the
United States Department of Transportation,
and J. Randolph Babbitt, as Administrator
of the Federal Aviation Administration,

         Defendants.
_____/

**PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER**
**AND OTHER INJUNCTIVE RELIEF**
**WITH INCORPORATED MEMORANDUM OF LAW**

Plaintiffs, **N884S, INC.**, and **JOHN J. KORESKO**, move pursuant to F.R.C.P. 65 and

request that this Court enter a Temporary Restraining Order prohibiting the sale, transfer or

registration and removal from this jurisdiction of the 1966 Beech Queen Air Model 88 aircraft,

FAA Registration No. N884S, Serial #LP-39.   Upon hearing or other procedure deemed

appropriate by this Court, Plaintiffs request the entry of a permanent order granting the relief

requested until completion of the present action and/or further order of this Court and, in support

thereof, states as follows:

**A.  Statement of the Case.**

Plaintiffs seek to enjoin the sale or any transfer of ownership or removal from this

jurisdiction of a certain 1966 Beech Queen Air Model 88 aircraft, FAA Registration No. N884S,

Serial #LP-39. ("the Aircraft").  The Aircraft is believed to be located in Lake Worth, Florida at

Palm Beach County Airport (FAA identifier LNA).  The parties to be enjoined by the requested

order are Defendants Dan Joyner, and Aviation Safety Technologies, Inc. Also subject to the

requested order are Defendant Ray LaHood, the Secretary of the United States Department of

Transportation ("DOT") and Defendant J. Randolph Babbitt, the Administrator of the Federal

Aviation Administration ("FAA"), United States Department of Transportation.   Secretary

LaHood and Administrator Babbitt are named in their official capacities only.  Relief is sought as

to these Defendants to prevent change in the registration and ownership of the Aircraft in the

records of the FAA.  An aircraft is not airworthy, and therefore, theoretically not legally capable

of flight out of this jurisdiction unless it has a valid registration. See 24 CFR 47.3;[1] 91.203. [2] And

a registration is not valid unless the FAA acts to record it. See 24 CFR 121.153.[3]

---

[1] **§ 47.3   Registration required.**

 (a) An aircraft may be registered under 49 U.S.C. 44103 only when the aircraft is—

(1) Not registered under the laws of a foreign country and is owned by—

(i) A citizen of the United States;

(ii) An individual citizen of a foreign country lawfully admitted for permanent residence in the United States; or

(iii) A corporation not a citizen of the United States when the corporation is organized and doing business under the laws of the United States or a State, and the aircraft is based and primarily used in the United States; . . .

 (b) No person may operate an aircraft that is eligible for registration under 49 U.S.C. 44101–44104, unless the aircraft—

(1) Has been registered by its owner;

(2) Is carrying aboard the temporary authorization required by §47.31(b); or

(3) Is an aircraft of the Armed Forces.

(c) Governmental units are those named in paragraph (a) of this section and Puerto Rico.

[2] **§ 91.203   Civil aircraft: Certifications required.**

Any conveyance which affects title to, or any interest in, any specifically described aircraft, aircraft engine, aircraft propeller, or spare parts location, may be recorded in the FAA Aircraft Registry for recording.  The regulations contain certain requirements for recording a sale contract as an encumbrance to title.[4] A transfer of equitable interest under a contract of conditional sale or lease with a purchase option, previously recorded with the FAA Aircraft

---

(a) Except as provided in §91.715, no person may operate a civil aircraft unless it has within it the following:

(1) An appropriate and current airworthiness certificate. Each U.S. airworthiness certificate used to comply with this subparagraph . . . must have on it the registration number assigned to the aircraft under part 47 of this chapter. However, the airworthiness certificate need not have on it an assigned special identification number before 10 days after that number is first affixed to the aircraft. A revised airworthiness certificate having on it an assigned special identification number, that has been affixed to an aircraft, may only be obtained upon application to an FAA Flight Standards district office.

(2) An effective U.S. registration certificate issued to its owner or, for operation within the United States, the second duplicate copy (pink) of the Aircraft Registration Application as provided for in §47.31(b), or a registration certificate issued under the laws of a foreign country.

[3] Sec. 121.153

Aircraft requirements: General.

(a) Except as provided in paragraph (c) of this section, no certificate holder may operate an aircraft unless that aircraft--
(1) Is registered as a civil aircraft of the United States and carries an appropriate current airworthiness certificate issued under this chapter; and
(2) Is in an airworthy condition and meets the applicable airworthiness requirements of this chapter, including those relating to identification and equipment.

[4] **§ 47.11   Evidence of ownership.**

Except as provided in §§47.33 and 47.35, each person that submits an Application for Aircraft Registration under this part must also submit the required evidence of ownership, recordable under §§49.13 and 49.17 of this chapter, as follows:

(a) The buyer in possession, the bailee, or the lessee of an aircraft under a contract of conditional sale must submit the contract. The assignee under a contract of conditional sale must submit both the contract (unless it is already recorded at the FAA Aircraft Registry), and his assignment from the original buyer, bailee, lessee, or prior assignee.

(c) The buyer of an aircraft at a judicial sale, or at a sale to satisfy a lien or charge, must submit a bill of sale signed by the sheriff, auctioneer, or other authorized person who conducted the sale, and stating that the sale was made under applicable local law.

Registry, shall be executed by the original conditional buyer (or their assignee) and the seller under the contract of conditional sale (or their assignee) to show consent to the transfer.  In the present case, Plaintiffs alleged that if defendants had not breached their contract, Plaintiffs would have been eligible to record the evidence of their agreement to purchase and sell the aircraft. Plaintiffs have at the very least an equitable claim. Consequently, the Plaintiffs believe that the FAA would be compelled by regulation to record the plaintiff's claim against the aircraft if the appropriate order issued from this court, as this would be "appropriate evidence" of the claim to title. See 24 CFR 47.35. [5]

The lawsuit related to this request for injunctive relief seeks specific performance of the terms of a contract between Plaintiffs and Defendants Joyner and Aviation Safety Technologies, Inc., for the purchase of the subject aircraft.  The Complaint sets forth Plaintiffs' claims for specific performance, breach of contract, fraud and violation of Florida's Deceptive Trade Practices Act, Fla. Stat. §501.204. [Dkt No. 1]

---

[5] **§ 47.35   Aircraft last previously registered in the United States.**

 (a) A person who is the owner of an aircraft last previously registered under 49 U.S.C. Sections 44101–44104, or under other law of the United States, may register it under this part if he complies with §§47.3, 47.7, 47.8, 47.9, 47.11, 47.13, 47.15, and 47.17, as applicable and submits with his application an Aircraft Bill of Sale, AC Form 8050–2, signed by the seller or an equivalent conveyance, or other evidence of ownership authorized by §47.11.

(1) If the applicant bought the aircraft from the last registered owner, the conveyance must be from that owner to the applicant.

(2) If the applicant did not buy the aircraft from the last registered owner, he must submit conveyances or other instruments showing consecutive transactions from the last registered owner through each intervening owner to the applicant.

(b) If, for good reason, the applicant cannot produce the evidence of ownership required by paragraph (a) of this section, he must submit other evidence that is satisfactory to the Administrator. This other evidence may be an affidavit stating why he cannot produce the required evidence, accompanied by whatever further evidence is available to prove the transaction.

**B. Facts.**

The salient facts are as follows and are confirmed in the affidavit of John J. Koresko attached hereto as Exhibit 1.

In late summer 2009, Plaintiff John J. Koresko began to communicate with Defendant Joyner concerning purchase of the 1966 Beech Queen Air Model 88 aircraft, FAA Registration No. N884S, Serial #LP-39. ("the Aircraft").  The Aircraft's registered owner is Aviation Safety Technologies, Inc.  Mr. Joyner and Mr. Koresko had several written and oral communications about the Aircraft.  Mr. Joyner advertised the Aircraft for many months. But he did not sell it. Finally, Mr. Joyner anounced a competitive auction for the Aircraft through the auction mechanism of E-bay.  See www.ebay.com.

The competitive auction on E-bay began on September 2, 2010 and continued until September 9, 2010.  Mr. Koresko submitted the winning bid of $56,400.00 under the screen name "Korjojo1."  Mr. Koresko then created a Delaware corporation, N884S, Inc., with the intention of having ownership taken by that entity.  In order to secure the bid and confirm the purchase, Mr. Joyner required a deposit of $2,000 by way of PayPal within a day after the end of the auction.  The balance of the purchase price was due within five days of the date of the winning bid.  The winning bid was submitted on September 9, 2010.  Mr. Koresko made a deposit of $2,000 to Mr. Joyner via PayPal as required.

On September 10, Mr. Koresko also asked Mr. Joyner if the mechanic for the Aircraft would stick by the estimate for conducting an annual inspection which Joyner communicated to Koresko long before the EBay auction.  Joyner wrote back by email and confirmed the availability of the mechanic, and that Mr. Koresko was "lucky the mechanic had a place in his schedule."  See Email Exhibit C to Complaint, Dkt No. 1-3.

On September 13, 2010 Mr. Koresko informed Mr. Joyner that Koresko's attorney located in Hollywood, Florida would serve as the escrow agent and that he was prepared to close the sale immediately.  This was all in accordance with the terms of sale specified by Mr. Joyner in the competitive auction on E-Bay. On September 13, 2010, Mr. Joyner advised that he sold the Aircraft to another party in response to another advertisement that he called the "Controller advertisement."

On September 14, 2010 Mr. Koresko through counsel sent his demand to Mr. Joyner to complete the transaction as there was an offer to sell and acceptance of terms and material compliance.  In response Mr. Joyner sent an e-mail to Mr. Koresko's counsel confirming his intent to sell to another party

Mr. Joyner placed the aircraft in a competitive auction with no other restrictions other than the requirements for payment of the winning bid.  Mr. Koresko submitted the winning bid and complied with the 24 hour deposit requirement.  Mr. Koresko designated his agent in Florida and was prepared to tender full payment within the time frame set by Mr. Joyner. At no time did Mr. Joyner inform E-bay or any auction participants that the auction on E-bay was not a final auction.  At no time did Mr. Joyner advise Mr. Koresko as a bidder that the Aircraft was not available or otherwise encumbered. Mr. Joyner offered the Aircraft for sale in a competitive auction, required a $2,000 deposit upon receipt and acceptance of the winning bid and close of the sale within five (5) days of the winning bid.  Mr. Koresko met all of the conditions.  The parties had an agreement and Mr. Joyner breached the agreement.

### C.  Uniqueness of the property.

The purchase of this Aircraft by Mr. Koresko provided a unique opportunity.  The Aircraft, Queen Air Model 65-88 had approximately 2500 hours on the airframe, which is virtually

unheard of for a plane built in the mid 1960s.  Furthermore, even though Model 88 was built with piston engines, it had a unique engine compartment and wing structure capable of accepting other engines.  In the 1960s, the U.S. Army commissioned Beechcraft (the manufacturer) to assemble the Queen Air with much more powerful turbo-prop engines.  The Model 65-88 was built and engineered with wingload capacity and other characteristics for turbo-prop engines.  Thus, it became the prototype the Army's military version of the plane and for the domestic civil version of the aircraft re-named "King Air."  The King Air was identified as Model 65-90, owing to its Queen Air roots.  King Air is generally regarded as the most successful domestic small turbo-prop aircraft in history.  It is virtually impossible to find a pressurized, turbo-prop, King Air in the marketplace with under 7500 hours, and even so, no King Air with new turboprop engines is available in the published marketplace for under $600,000.  But if Plaintiffs had been able to acquire the Aircraft, they could have converted it to turbine engines, for approximately $300,000, and be left with a pressurized, turboprop airplane with only 2500 hours on the airframe, at a fraction of the cost of a King Air.

The Aircraft, being a pressurized plane unlike other "Queen Airs" available in the marketplace, is also virtually unique without any conversion.  The replacement price for a non-pressurized "Queen Air" would exceed $140,000 – and even then, the cost to pressurize it would be substantial, if it could be done at all.  Consequently, the success of Plaintiffs at auction was a dramatic benefit, for both their plans and under objective economic analysis, and they cannot replicate the benefit of their bargain without the intervention of this court.

### D. Standard for Injunctive Relief

It is settled law in this Circuit that a preliminary injunction is an "extraordinary and drastic remedy."  *Zardui-Quintana v. Richard*, 768 F.2d 1213, 1216 (11th Cir.1985). To obtain such

relief, a movant must demonstrate: (1) a substantial likelihood of success on the merits of the underlying case, (2) the movant will suffer irreparable harm in the absence of an injunction, (3) the harm suffered by the movant in the absence of an injunction would exceed the harm suffered by the opposing party if the injunction issued, and (4) an injunction would not disserve the public interest. *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.,* 299 F.3d 1242, 1246-47 (11th Cir.2002).

The goal of a preliminary injunction is to prevent irreparable harm in order to "preserve the district court's power to render a meaningful decision after a trial on the merits." *Canal Authority of the State of Florida v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974)."[T]he most compelling reason in favor of [granting a preliminary injunction is the need to prevent the judicial process from being rendered futile by defendant's action or refusal to act." Id. at 573.

The relevant inquiry is whether the threatened injury to the Plaintiff if a preliminary injunction is denied outweighs any potential harm to the defendant if the preliminary injunction is granted. *N. Am. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1217 (11th Cir. 2008)

**E.  Reasons For Granting The Relief Requested.**

**1. Likelihood of Success on the Merits-Breach of Contract**

In order to prevail on a claim of breach of contract Plaintiff must show the existence of an enforceable agreement and Defendants' failure to perform under the terms of the agreement. See *Cintas Corp. No. 2 v. Schwalier*, 901 So.2d 307, 309 (Fla. 1st DCA 2005). A contract must be reasonable and must provide a mutuality of obligation in order to be considered enforceable. *Hardwick Props., Inc. v. Newbern*, 711 So.2d 35, 38 (Fla. 1st DCA 1998); *Pick Kwik Food Stores, Inc. v. Tenser*, 407 So.2d 216, 218 (Fla. 2d DCA 1981).

In the present matter, Defendants made an offer through an E-bay auction to sell the Aircraft to the successful bidder.  The terms of the sale were payment of $2,000 within 24 hours of the successful bid and full payment of the purchase price within five days of the conclusion of the auction.  Plaintiffs accepted those terms and submitted the successful bid and paid the $2,000.00 as specified.  Plaintiffs after the initial payment made arrangements to complete the sale within the time specified. Defendants confirmed the sale and actually helped to arrange for the annual inspection Plaintiffs required to make the plane legal for flight.  Defendants then reneged on the agreement and refused to complete the sale, to the damage of Plaintiffs.

The outcome is the same if the court views the transaction as a unilateral contract.  A unilateral contract is a contract that substitutes performance as the consideration which makes the contract binding.  See Restatement of Contracts, § 12 ("A unilateral contract is one in which no promisor receives a promise as consideration for his promise).   In the present case, the essence of the unilateral contract on Ebay was:  if Koresko was the highest bidder and paid for it, Joyner said he would sell him the plane.  Koresko was the highest bidder, and he began to perform by making the first payment and arranging for his lawyer to complete the transaction. He was ready, willing and able to complete payment but for Joyner's refusal to sell the plane.

Joyner has made clear his intention not to sell, which would indicate an anticipatory breach in the setting of a bilateral contract.  Florida law recognizes a remedy for an anticipatory breach that places accomplishment of the purpose of a contract in jeopardy.  It is true that the law does not generally recognize an "anticipatory breach" of a strictly unilateral obligation such as one merely to pay money in installments under a promissory note, including one secured by a mortgage. *Roehm v. Horst,* 178 U.S. 1, 20 S.Ct. 780, 44 L.Ed. 953 (1900).  However, at least one

Florida court has recognized an exception.  In *Poinciana Hotel Miami Beach v.  Kasden*, 370

So.2d 399 (Fla. 3rd DCA 1979), the court said:

> [T]he Doctrine of Anticipatory Breach should apply because it
> fulfills the basic purposes of the Doctrine as set forth and
> explained by Professor Corbin in his Treatise on Contracts, Second
> Edition . . . Ordinarily, the Doctrine does not apply when there is a
> unilateral contract, or when there is a contract for one party that
> has been fully performed and the only thing left to do is to pay
> money damages. Under that set of circumstances, there is no
> jeopardy; no additional jeopardy to the mortgagee other than the
> fact that he has to wait for his money.

The court in *Poinciana Hotel* allowed a mortgage foreclosure to proceed, in part, because

of the anticipatory breach of certain default provision in various agreements of the mortgagor,

Also "taking into consideration the fact that the Defendant made it quite clear that it was not

going to live up to the terms of the mortgages and other obligations, stated that it was

contemplating bankruptcy; that the principal officer's wife had taken money and gone to South

America, the Court finds that Defendant made a clear and unequivocal repudiation of the

demands for payment . . ."   In finding sufficient jeopardy, the court said:  "The mortgagor, by

way of words, actions and general conduct in dealing with the appellees/mortgagees made it

clear that he had no intention of making the required payments on the mortgages. The record

showed a lack of good faith on the part of the mortgagor which, all in all, indicated an

unequivocal repudiation of all demands for payment and threatened the security of the

mortgage."

The present situation is more amenable to application of the doctrine of anticipatory

breach.   Whereas *Poinciana Hotel* involved a situation where the mortgagee had already

advanced money and was waiting to get paid, Mr. Joyner has something more to do.   He

promised by virtue of the auction format to present the plane for sale if the buyer tendered

money.   On the other hand, just as the mortgagee in *Poinciana Hotel* still had an unexecuted

obligation to satisfy its mortgage upon payment (a future event), Mr. Joyner's obligation to convey the plane also occurs upon payment (a future event).

Any theory of contract enforcement can apply in this case, and Koresko has a probability of success on the merits. Koresko is entitled to enforcement of the contract or the benefit of his bargain lost as a result of Joyner's breach or anticipatory breach. The object of the contract is in clear jeopardy of being defeated by the unilateral actions of Joyner, and this Court should grant the requested relief.

**2. Likelihood of Success on the Merits-Specific Performance**

Specific performance may be granted when (1) the plaintiff is clearly entitled to it, (2) there is no adequate remedy at law, and (3) the judge believes that justice requires it. See *Castigliano v. O'Connor*, 911 So.2d 145, 148 (Fla. 3rd DCA 2005). See also *Linkous v. Linkous*, 941 So.2d 530, 530 (Fla. 1st DCA 2006). The "granting of specific performance "rests largely in the discretion of the [judge] but the right to exercise this judicial discretion does not extend to the power or authority to contravene the legal requirements which must exist to give a litigant grounds upon which he may invoke the remedy.' *Howard Cole & Co. v. Williams*, 157 Fla. 851, 858, 27 So.2d 352, 356 (Fla. 1946)." *Castigliano*, 911 So.2d at 148.

In this case the primary legal requirement is the existence of a valid contract. Plaintiffs submit that there is no question a contract exists. Despite the existence of mutual obligations and Plaintiffs' fulfillment of the obligations, Defendants without cause or justification refused to meet their obligation to sell the Aircraft. The proper exercise of the Court's discretion is to require specific performance by Defendants.

### 3.  There Are Unique Circumstances Which Should Be Considered By The Court.

The essence of equity jurisdiction is to mould each decree to the necessities of the particular case.  Equitable principles require consideration of the unique circumstances of each case with due regard for flexibility, practicality and public interest. *Sun America Corp. v Sun Life Assurance Co. of Canada,* 77 F.3d 1325 (CA 11 1996), See also *Hecht Co. v Bowles,* 321 U.S. 5321, 64 S.Ct. 587 (1944).

This case presents the type of unique circumstances which can only be addressed by the Court's equitable powers.  Here the subject of the parties' agreement is a one-of-a-kind aircraft. It became available at a very favorable price because the Defendant owners were experiencing financial difficulty and needed cash. (See Affidavit of John J. Koresko attached as Exhibit 1) Purchase of this or a comparable airplane at the price accepted can never be duplicated.  It is of the utmost importance to maintain the *status quo* through equitable relief.

Also unique to this case is the admission of insolvency by the Defendants to Mr. Koresko.  There is a realistic possibility that if injunctive relief is not granted the Defendants will be insolvent at the time judgment is reached. This Court should consider the potential insolvency of the Defendants.  A risk that a wronged party will not be able to obtain the full measure of damage due to defendant's insolvency supports a finding that there is no other adequate remedy at law in the absence of injunctive relief. *Deckert v Independence Shares Corp.,* 311 U.S. 282, 61 S.Ct. 229 (1940), *Performance Unlimited, Inc. v Quesar Publishers,* 52 F3d 1373 (CA 6 1995).

### 4. Likelihood of Success on the Merits-Fraud

The elements of fraud are: "(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and, (4) consequent injury by the party acting in reliance on the

representation." *Johnson v. Davis*, 480 So.2d 625, 627 (Fla. 1985); *Taylor Woodrow Homes Fla., Inc. v. 4/46-A Corp.*, 850 So.2d 536, 542 (Fla. 5th DCA 2003); *Lopez-Infante v. Union Cent. Life Ins. Co.,* 809 So.2d 13, 15 (Fla. 3d DCA 2002).

The facts of this case clearly support a finding of fraud.  Defendants placed the Aircraft in a competitive auction representing that the auction would be a final sale.  They induced Koresko into thinking there was no problem with the deal by actually helping to arrange mechanical services for the annual inspection.  Yet, at the same time, Defendants secretly advertised the Aircraft for sale in other media.  Defendants knew that their representation as to the E-bay auction was false.  Defendants intended to solicit bids and induced Plaintiffs to submit their bid and arrange for final sale.  Plaintiffs did so and incurred costs and other losses as described in the Complaint.

Plaintiffs submit that they can and will prove all the elements of fraud.  For the purpose of this motion for injunctive relief, there is a substantial likelihood of success on the fraud count.

**5. Likelihood of Success on the Merits-Violation of Florida's Deceptive Trade Practices Act, Fla. Stat. §201.504.**

§501.204 of Florida's Deceptive Trade Practices Act makes it unlawful for any person or entity to engage in deceptive or unfair acts in the conduct of any trade or commerce.  The statute does not define any specific conduct but rather permits consideration of a broad variety of acts that can be deemed deceptive or unfair as those terms are commonly understood.

Here there can be little question that Defendants' actions were deceptive.  The E-bay auction was little more than a subterfuge to attempt to drive up the purchase price of the Aircraft.  Even assuming for the sake of argument that the E-bay auction was initiated with good intentions, Defendants' attempted sale of the Aircraft to another party is a deceptive and unfair act.  This conduct is prohibited by §501.204 of the Act and Plaintiffs will succeed on the claim.

**6. Irreparable Harm.**

Plaintiffs submit that injunctive relief is necessary to prevent irreparable harm as the absence of any restriction on the Aircraft and transfer of ownership will permanently deprive Plaintiffs of their right to sole possession and ownership of the Aircraft.  This is not a situation where Plaintiff can go out into the marketplace and purchase an identical or similar aircraft.  As noted above this particular aircraft was a prototype for a later model and was pressurized.  A pressurized "Queen Air" is not available at the agreed upon price and making a comparable plane pressurized would exceed $140,000.00.  But there really is no comparable Queen Air in the marketplace for sale, as a 50 year old plane with only 2500 hours on the airframe (translating into flight of only 50 hours per year) is like finding a 50 year old car with only 2500 miles!  The court is perfectly capable and permitted to make reference to its own experience in assessing things like the rare find at issue in this case.

An injunction does not harm the Defendants.  Preservation of the *status quo* places the Defendants in the same position they were in before this suit was filed.  As noted, the inquiry at this point is whether the potential harm to the Plaintiffs outweighs the harm, if any, imposed on Defendants.  As the injunction will simply preserve the *status quo* for the Defendants, there is no impediment to the relief requested.  The failure to grant the injunction will render futile any subsequent proceedings and Plaintiffs will lose the ability to have a full and fair determination of the rights of all parties.

Plaintiffs have no adequate remedy at law.  As noted above the Aircraft is a unique item of property.  Damages relating to the claims for breach of contract and other claims set forth in the Complaint can never fully compensate Plaintiffs for the loss of ownership.  Furthermore, it appears that Mr. Joyner may be in financial trouble such that he would sell the plane and spend

the proceeds.   The court must consider whether he could even satisfy a money judgment. Restriction on the transfer of ownership until the conclusion of this litigation is the only means to preserve the rights of the parties. In the consideration of time, Plaintiffs are willing to expedite discovery, as any relevant discovery should be minor and are agreeable to an expedited final hearing on this matter.

**7.  Public Interest.**

The public interest is always served when a full and fair determination of the rights of the parties can proceed in the Courts.   Here preservation of the *status quo* permits this for both Plaintiffs and Defendants.   In addition the public interest is served by preventing submission of questioned ownership documents and registration materials to the Federal Aviation Administration's aircraft database. This is a database relied upon by the public at large to provide accurate information as to ownership and specifications of aircraft.   Granting the requested relief will prevent an abuse of a government database and prevent any questions as to the accuracy and reliability of that database.

**F. Conclusion**

Plaintiffs submit that the prerequisites for the grant of injunctive relief have been met and request the entry of an Order requiring the following:

1. Directing the Secretary of the U.S. Department of Transportation and the Administrator of the Federal Aviation Administration to reject and/or refuse any application for change of ownership and registration of the Aircraft now registered as N884S with the owner identified as Aviation Safety Technologies, Inc.   In addition to direct the Secretary and Administrator to maintain the record of this registration and note the complaint and the order of injunction issued in this case in the Aircraft Registry as an equitable claim until further Order of Court.

2. Enjoining Defendant Joyner and Defendant Aviation Technologies, Inc. from selling the Aircraft registered as N884S or otherwise transferring ownership of the Aircraft during this litigation.

3.  Enjoining Defendant Joyner and Defendant Aviation Technologies, Inc., from removing the Aircraft from its location in Lantana, Florida until completion of this matter.

4.  Directing Defendant Joyner and Defendant Aviation Technologies, Inc. to maintain the Aircraft in the condition represented in the E-bay auction advertisement and photographs on September 2, 2010 to September 9, 2010.

5.  Directing Defendant Joyner and Defendant Aviation Technologies, Inc., to restore to the Aircraft any item or mechanical part removed from the Aircraft since September 9, 2010 except in the case where alteration was made to improve the operation and safety of the Aircraft.

6.  Any other such relief as the Court deems appropriate.

Dated this 28th day of September, 2010.

Respectfully submitted,
**LAW OFFICES OF SCOTT ALAN ORTH, P.A.**
*Attorney for Plaintiffs*
3880 Sheridan Street
Hollywood, Florida 33021
Telephone: (305) 757-3300
Facsimile: (305) 757-0071
Email: orthlaw@bellsouth.net


By:    s/ Scott A. Orth, Esq.
       SCOTT ALAN ORTH, ESQ.
       Florida Bar No. 436313


**CERTIFICATE OF SERVICE**

WE HEREBY CERTIFY that a true and correct copy of the foregoing was filed via CM/ECF this 28th day of September, 2010 and sent via U.S. Mail to: **DANNY JOYNER**, 9561 Spanish Moss Road, Lake Worth, Florida 33467; **AVIATION SAFETY TECHNOLOGIES, INC**., 2633 Lantana Road, Suite 3, Lantana, Florida 33462; **RAY LAHOOD**, as Secretary, United States Department of Transportation, 1200 New Jersey Avenue, NE, Washington, D.C. 20590 and **J. RANDOLPH BABBITT**, as Administrator, Federal Aviation Administration, United States Department of Transportation, 800 Independence Avenue SW., Washington, D.C. 20591.

                                        s/ Scott A. Orth, Esq.
                                        Scott A. Orth, Esq.


F:\JOHN J KORESKO V\MT TRO 10 09 27.doc